**UNIITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| ROYAL ENTERTAINMENT EVENTS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-CV-5721 |
| | ) | |
| v. | ) | Hon. Charles P. Kocoras |
| | ) | |
| LEVY FOODSERVICE LP, | ) | Removed from the Circuit Court of Cook |
| | ) | County, Illinois, Case No. 2024 L 010172 |
| Defendant. | ) | |
| | ) | |
| | ) | |
| IN RE: BREACH OF CONTRACT | ) | |

# FOURTH AMENDED COMPLAINT

## I. INTRODUCTION

1. Royal Entertainment, an event management services company, brings this claim against Levy, a food and beverage concessionaire, for:

   a. fraudulent inducement into a contract which permitted Royal Entertainment to earn a commission for the sale of concessions at a racetrack in Richmond, Virgina (the "Richmond Contract");

   b. breach of the duty of good faith and fair dealing by terminating a separate contract which permitted Royal Entertainment to earn a commission for the sale of concessions at a racetrack in Daytona, Florida, (the "Daytona Contract") in bad faith;

   c. unjust enrichment in the amount of the commissions Royal Entertainment reasonably expected to earn from the sale of concessions at the Richmond and Daytona racetracks during the two days Royal Entertainment sold concessions at the Richmond and Daytona racetracks; or, in the alternative,

   d. breach of the Contracts related to Levy's performance of both contracts.

2. Levy's behavior (as described more fully below) has caused Royal Entertainment to suffer more than $20,000,000.00 in damages and should subject Levy to punitive damages in an amount to be proven at trial.

## II. THE PARTIES

3. Royal Entertainment is an event management services company organized under the laws of the State of Delaware as a limited liability company with its principal place of business in Olive Branch, Mississippi.

4. Levy is a food and beverage company which is organized under the laws of the State of Florida with its principal place of business in Chicago, Illinois.

5. Royal Entertainment and Levy (collectively the "Parties") signed two contracts:

   a. The first contract was signed July 29, 2024 and concerns the sale of concessions at the Daytona International Speedway in Daytona, Florida, and expires on December 31, 2026 (the "Daytona Contract");

   b. The second contract was signed August 5, 2024, concerns the sale of concessions at the Richmond International Raceway in Richmond, Virginia, and expires on August 4, 2026 (the "Richmond Contract").

6. With the exception of a slight discrepancy in Section 7.1 of the Contracts relating to how Royal Entertainment is to be paid for alcohol sales in Florida, the Daytona Contract and the Richmond Contract (collectively the "Contracts") are identical. Copies of the Contracts are attached to this Amended Complaint as Exhibits 1 and 2, respectively, and are incorporated herein by reference.[1]

## III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction because the Court has ruled that this dispute could be removed from Illinois State Court to United States District Court for the Northern District of Illinois. [Doc. 27]. As such, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because this is a civil dispute between citizens of different states and the amount in controversy exceeds $75,000.

8. Levy's principal place of business is in Chicago, Illinois and Article 17 of the Contracts provide:

> "This Agreement shall be governed by, construed and enforced, in accordance with the laws of the State of Illinois without regard to conflict of law principles. The parties agree that any and all disputes, controversies, or claims of whatever nature arising out of or relating to this Agreement or breach thereof shall be only resolved by a state or

[1] Although the attached copies of the Contracts are not duly executed, Royal Entertainment attests that duly executed copies exist and are currently in Defendant Levy's possession.

federal court in the State of Illinois, and the parties hereby consent to the exclusive jurisdiction of such courts in any action or proceeding arising under or brought to challenge, enforce, or interpret any of the terms of this Agreement."

9. Venue is appropriate in the Northen District of Illinois, because Levy's principal place of business is in the Northern District of Illinois and because Levy waives the right to contest this venue in Article 17 of the Contracts.

## IV. FACTS

10. On July 23, 2024 Levy retained Royal Entertainment to be one of two vendors selling concessions at the Daytona International Speedway.

11. On information and belief, Levy retained Royal Entertainment as part of a program designed to introduce women and minority-owned businesses to the NASCAR racing ecosystem, but actively preferred to do business exclusively with its legacy concession company (hereinafter the "Legacy Vendor"). (*See* e.g., NASCAR Supplier Code of Conduct, attached as Exhibit 3).

12. In that vein, on or around July 15, 2024 Levy offered Royal Entertainment the Richmond Contract, which was scheduled to begin on August 5, 2024 (18 days before Royal Entertainment was scheduled to begin selling concessions in Daytona).

13. The Richmond Contract required Royal Entertainment to:

a. "conduct the sale of only those Concessionaire's products identified in Exhibit A" (Section 1.1);

b. submit proposed pricing, size offerings and packing for the Products (Section 1.2);

c. provide equipment and supplies "necessary for the sale of the Products" (Section 1.3);

d. hire employees of an appropriate age and volume to serve the Products (Sections 1.4, 5.1, 5.2 and 5.3);

e. maintain and repair all equipment, supplies and vehicles necessary to transport and sell the Products (Section 1.4, 5.1, 5.2 and 5.3);

f. maintain the hygiene and cleanliness of each Concession Location (Section 3.1);

g. "maintain sufficient inventory of the Products to meet anticipated demand for the Products" and "order and transport the Products to and from the Concession Locations" (Section 4.1);

h. provide all beverage cups and paper products (Section 4.2).

Despite the above, on August 4, 2024 Jade Conyers of Levy promised that Levy would provide the menus, food, paper goods and equipment for Richmond on a telephone conference with Hunter Park of Royal Entertainment (collectively the "Misrepresentation").

14. Royal Entertainment signed the Richmond Contract on August 5, 2024 in reliance on the Misrepresentation.

15. The Misrepresentation was material to Royal Entertainment's decision to sign the Richmond Contract because Royal Entertainment had concerns about whether it would be able to procure all of the food, equipment and other resources necessary to perform the Richmond Contract on such short notice. The Misrepresentation was material to Royal Entertainment's decision to sign the Richmond Contract. Royal Entertainment expressed these concerns to Levy orally and in writing before signing the Richmond Contract. Royal Entertainment never would have signed the Richmond Contract if Levy had not made the Misrepresentation.

16. The Richmond Contract required (among other things), that:

a. "At each event Levy shall provide [Royal Entertainment] with a POS System to be used during events" (Section 1.3);

b. Levy provide "A Settlement Sheet … immediately following each event indicating Net Sales and Commissions due to [Royal Entertainment]. Both parties will sign the Settlement Sheet" (Section 7.2); and

c. Levy would pay Royal Entertainment:

   i) 60% of net sales of Basic Food;

   ii) 30% of the net sales of Specialty Food;

   iii) 15% of the net sales of Beer;

   iv) 10% of the net sales of Non-Alcoholic Beverages.

17. Despite making the Misrepresentation, Levy did not provide the food, menus or equipment necessary to perform the Richmond Contract.

18. Despite having incomplete information about the menus and having to purchase food for

40,000 visitors in less than forty-eight (48) hours, Royal Entertainment appeared in Richmond on August 8, 2024 to prepare for and operate on:

a. August 10, 2024 at Richmond ("Richmond Day 1");

b. August 11, 2024 at Richmond ("Richmond Day 2");

(collectively the "Richmond Event Days").

19. Levy abused its discretion with respect to the Richmond Event Days to make it difficult for Royal Entertainment to perform its duties and determine its commission—to wit, Defendant Levy:

a. refused to disclose the Products to be sold until it was too late for Royal Entertainment to "order and transport" the Products or "maintain a sufficient inventory of Products" as required by Section 4.1 of the Contracts;

b. refused to disclose the Products to be sold until it was too late to "submit proposed pricing, size offerings and packing for the Products" as required by Section 1.2 of the Contracts;

c. failed to provide power to Royal Entertainment's Concession Locations on Richmond Day 1, which prevented Royal Entertainment from conducting any sales while there was no power;

d. intentionally withheld the charging blocks necessary to charge the POS Systems which made it difficult to conduct the sale of any products as required by Section 1.1 of the Contracts;

e. loaded inaccurate menu and seller codes in the POS Systems, which made it impossible to accurately track sales, commissions and gratuities earned by Royal Entertainment and its employees;

f. ignored Royal Entertainment's requests to replenish Product Inventory which made it difficult to "maintain a sufficient inventory of Products" as required by Section 4.1 of the Contracts;

g. refused to provide a Settlement Sheet each day so Royal Entertainment could not confirm the amount of inventory or sales;

h. refused to provide Royal Entertainment the commission it earned on any day;

i. provided false estimates of the concession items Royal Entertainment was requested to sell making it difficult to estimate equipment and resource needs and maintain a sufficient inventory of Products as required by Section 4.1 of the Contracts; and

j. assigned Royal Entertainment to sell Products in concession locations Levy had previously confirmed Royal Entertainment was not equipped to sell, undermining Royal Entertainment's ability to "conduct the sale of products" as required by Section 1.1 of the Contracts.

(Collectively "Levy's Bad Faith Behavior")

20. On information and belief, Levy made the Misrepresentation and engaged in the Bad Faith Behavior as part of a larger scheme to prevent Royal Entertainment from earning a commission on the Daytona Contract so Levy could work with its Legacy Vendor in Daytona (the "Scheme").

21. In furtherance of the Scheme, On August 19, following Richmond Day 2, Levy terminated the Daytona Contract via email from Ty Bittner of Levy at Daytona International Speedway:

> "Pursuant to Section 11.2 of the Subcontractor Concession Agreement, attached here, between Levy Premium Foodservice Limited Partnership ('Levy'), and Royal Entertainment Events ('Concessionaire'), dated July 23, 2024 Levy hereby gives Concessionaire written notice of its termination of the Subcontractor Concession Agreement. Such termination will be effective within five (5) days of the date hereof on August 24, 2024."
>
> (*See* the "Daytona Termination Notice", which is attached as Exhibit 4).

22. The Daytona Termination Notice did not provide Royal Entertainment the five-day notice required by Section 11.2 of the Daytona Contract.

23. Levy threatened to call the police if Royal Entertainment appeared in Daytona, but Royal Entertainment appeared on August 21, 2024 to prepare for and operate on August 23, 2024 ("Daytona Day 1") and August 24, 2024 ("Daytona Day 2") as scheduled anyway.

24. Levy repeated the same Bad Faith Behavior it engaged in during the Richmond Event Days during both Daytona Day 1 and Daytona Day 2.

25. Since Daytona Day 2, Levy has informed Royal Entertainment that it never planned to engage Royal Entertainment for any future events under any of the Contracts and has not done so.

26. Since signing the Contracts, Royal Entertainment has discovered information sufficient for it to believe that:

    a. Levy's Bad Faith Behavior was intentional;

    b. Levy did not have a genuine interest in engaging Royal Entertainment and only did so as part of a NASCAR diversity vendor code of conduct directive; and

    c. Levy's Legacy Vendor also sold concessions during the Richmond and Daytona events and did not have the problems Royal Entertainment had as a result of Levy's Bad Faith Behavior.

**COUNT 1**
**FRAUD IN THE INDUCEMENT OF THE RICHMOND CONTRACT**

27. Royal Entertainment incorporate paragraphs 1-26 as if set fully herein.

28. The Misrepresentation was false statement of future conduct.

29. Levy knew the Misrepresentation was false when it made it.

30. The Misrepresentation was made as part of a larger Scheme.

31. Levy made the Misrepresentation in order to induce Royal Entertainment to enter into the Richmond Contract.

32. Royal Entertainment relied on the truth of the Misrepresentation when it decided to sign the Richmond Contract.

33. Royal Entertainment's reliance on the truth of Misrepresentation was justified because:

    a. Levy was aware that Royal Entertainment did not have a logistics contract with a food distribution company;

    b. Levy was aware that it would be next to impossible for Royal Entertainment to procure food for more than 40,000 patrons with little notice an unconfirmed menu and locations and without a food distribution contract;

    c. Levy had a logistics contract with a food distribution company;

    d. Levy could (and did) order food on behalf of its other vendors;

    e. Levy was aware that Royal Entertainment would not sign the Richmond Contract unless Levy agreed to provide the food.

34. Royal Entertainment has been damaged by Levy's behavior in that it has incurred expenses related to the Richmond Event Days for which it was never reimbursed and it earned commissions for the Richmond Event Days for which it was never paid.

WHEREFORE, Royal Entertainment prays for actual damages and punitive damages against Defendant Levy in an amount to be proven at trial.

**COUNT II**

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING IMPLIED IN THE DAYTONA CONTRACT**

35. Royal Entertainment incorporates and realleges paragraphs 1-26 as if set fully herein.
36. Royal Entertainment and Levy signed the Daytona Contract.
37. The Daytona Contract is a valid and enforceable contract.
38. Royal Entertainment performed its obligations under the Daytona Contract.
39. Section 11.2 of the Daytona Contract gives Levy the discretion to terminate the Daytona Contract without cause.
40. Levy abused its discretion to terminate the Daytona Contract without cause when it decided to terminate the Daytona Contract because it preferred to work with the Legacy Vendor exclusively.
41. Royal Entertainment suffered more than $20,000,000.00 in damages as a result of Levy's breach of the Daytona Agreement.

WHEREFORE, Royal Entertainment prays for expectation and consequential damages against Defendant Levy in an amount to be proven at trial.

**COUNT III**

**UNJUST ENRICHMENT**

42. Royal Entertainment incorporates and realleges paragraphs 1-26 as if set fully herein.
43. Levy received the benefit of Royal Entertainment's labor at the Richmond and Daytona events.
44. Levy's retention of the benefit of Royal Entertainment's labor at the Richmond and Daytona events was unjust.
45. Levy's retention of the benefit of Royal Entertainment's labor caused harm to Royal Entertainment.

WHEREFORE, Royal Entertainment prays for a remedy equal to the reasonable value of its services at the Richmond and Daytona events.

## COUNT IV
## BREACH OF CONTRACTS

46. Royal Entertainment reincorporates and realleges paragraphs 1-22 as if set fully herein.

47. Count IV is pled in the alternative to Count III.

48. Royal Entertainment and Levy signed the Contracts.

49. The Contracts are valid and enforceable agreements between Royal Entertainment and Levy.

50. Pursuant to the terms of the Contracts, Levy promised to provide Royal Entertainment with:

   a. POS Systems to sell products;

   b. a settlement sheet to confirm sales; and

   c. commission on sales as outlined in Section 7.2.

51. Levy failed to provide Royal Entertainment with:

   a. POS Systems that worked;

   b. settlement sheets to confirm sales; and/or

   c. the commission on sales as outlined in Section 7.2.

WHEREFORE, Royal Entertainment prays for damages in an amount equal to the value of the commission to which it was entitled under Section 7.2 of the Contracts.

## JURY DEMAND

Royal Entertainment demands a trial by Jury of 12 persons on all issues so triable.

**ROYAL ENTERTAINMENT EVENTS**

By: */s/ Steven V. Hunter*
One of Its Attorneys

Steven V. Hunter
Taylor Rioux
QUARLES & BRADY LLP (Firm No. 36566)
155 North Wacker Drive, Suite 3200
Chicago, Illinois 60606
(312) 715-5000
Steven.Hunter@quarles.com
Taylor.Rioux@quarles.com

## CERTIFICATE OF SERVICE

Taylor R. Rioux, an attorney of record, hereby certify that on January 21, 2026, I caused the foregoing **Plaintiff's Fourth Amended Complaint** referenced therein to be electronically filed and served on all parties using the court's Odyssey eFile IL ECF system.

*/s/ Taylor R. Rioux*
Taylor R. Rioux