UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROYAL ENTERTAINMENT EVENTS, LLC,<br><br>Plaintiff and Counter-defendant,<br><br>v.<br><br>LEVY PREMIUM FOODSERVICE LIMITED PARTNERSHIP,<br><br>Defendant and Counter-claimant. | ) | Case No. 1:25-cv-5721<br><br>Honorable Charles P. Kocoras<br><br>Removed from the Circuit Court of Cook County, Illinois, Case No. 2024 L 010172 |

**LEVY PREMIUM FOODSERVICE LP'S ANSWER AND COUNTERCLAIMS**

For its answer to the surviving counts of the Fourth Amended Complaint ("Complaint") of Plaintiff and Counter-defendant Royal Entertainment Events, LLC ("Royal"), Defendant and Counter-claimant Levy Premium Foodservice Limited Partnership ("Levy") denies each and every, all and singular, allegation contained in the Complaint and each claim for relief thereof which is not expressly admitted. Levy denies all allegations contained in headings and sub-headings and includes them only for purposes of the answer. Further, Levy brings counterclaims against Royal for breach of contract. Levy admits, denies, and alleges as follows:

## ANSWER

### I. INTRODUCTION

1. Levy admits only that Royal purports to bring claims for unjust enrichment and breach of contract but otherwise denies the allegations in Paragraph 1.
2. Levy denies the allegations in Paragraph 2.

### II. THE PARTIES

3. Levy admits the allegations in Paragraph 3.
4. Levy denies the allegations in Paragraph 4.
5. Levy admits the allegation that the Parties signed the contracts described in Paragraph 5 but otherwise denies these allegations on the basis that Levy properly terminated the contracts before their respective expiration dates.
6. Levy denies the allegations in Paragraph 6.

## III. JURISDICTION AND VENUE

7. The allegation in Paragraph 7 is a legal conclusion to which no response is required.
8. Levy admits the allegations in Paragraph 8.
9. The allegation in Paragraph 9 is a legal conclusion to which no response is required.

## IV. FACTS

10. Levy admits the allegations in Paragraph 10.
11. Levy denies the allegations in Paragraph 11.
12. Levy denies the allegations in Paragraph 12 to the extent that the first three words of the Paragraph incorporate the allegations of Paragraph 11. Levy otherwise admits the allegations in Paragraph 12.
13. Levy denies the allegations in subparagraphs (a) through (h) of Paragraph 13 to the extent that they contain imprecise quotations and misplaced citations to the Richmond Contract. Levy denies the remaining allegations in Paragraph 13.
14. Levy denies the allegations in Paragraph 14.
15. Levy denies the allegations in Paragraph 15.
16. Levy denies the allegations in Paragraph 16.
17. Levy denies the allegations in Paragraph 17.

18. Levy admits that Royal appeared in Richmond but otherwise denies the allegations in Paragraph 18.
19. Levy denies the allegations in Paragraph 19.
20. Levy denies the allegations in Paragraph 20.
21. Levy admits that it terminated the Daytona Contract via email on August 19 but otherwise denies the allegations in Paragraph 21.
22. Levy denies the allegations in Paragraph 22.
23. Levy admits the allegations in Paragraph 23.
24. Levy denies the allegations in Paragraph 24.
25. Levy admits the allegations in Paragraph 25.
26. Levy denies the allegations in Paragraph 26.

COUNT 1

FRAUD IN THE INDUCEMENT OF THE RICHMOND CONTRACT

27. No response is required because Count I has been dismissed with prejudice.
28. No response is required because Count I has been dismissed with prejudice.
29. No response is required because Count I has been dismissed with prejudice.
30. No response is required because Count I has been dismissed with prejudice.
31. No response is required because Count I has been dismissed with prejudice.
32. No response is required because Count I has been dismissed with prejudice.
33. No response is required because Count I has been dismissed with prejudice.
34. No response is required because Count I has been dismissed with prejudice.

COUNT II

BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING IMPLIED IN THE DAYTONA CONTRACT

35. No response is required because Count II has been dismissed with prejudice.

36. No response is required because Count II has been dismissed with prejudice.

37. No response is required because Count II has been dismissed with prejudice.

38. No response is required because Count II has been dismissed with prejudice.

39. No response is required because Count II has been dismissed with prejudice.

40. No response is required because Count II has been dismissed with prejudice.

41. No response is required because Count II has been dismissed with prejudice.

COUNT III

UNJUST ENRICHMENT

42. Paragraph 42 incorporates Royal's allegations in Paragraphs 1–26. Levy incorporates its answers to the allegations in Paragraphs 1–26.

43. Levy denies the allegations in Paragraph 43.

44. Levy denies the allegations in Paragraph 44.

45. Levy denies the allegations in Paragraph 45.

COUNT IV

BREACH OF CONTRACTS

46. Paragraph 46 incorporates Royal's allegations in Paragraphs 1–22. Levy incorporates its answers to the allegations in Paragraphs 1–22.

47. The allegation in Paragraph 47 is a legal conclusion to which no response is required.

48. Levy admits the allegations in Paragraph 48.

49. Levy admits the allegations in Paragraph 49.

50. Levy admits the allegation in subparagraph (a) of Paragraph 50. Levy denies the remaining allegations in Paragraph 50.

51. Levy denies the allegations in Paragraph 51.

## AFFIRMATIVE DEFENSES

Levy's Affirmative Defenses are listed below. Levy denies any allegations in the Complaint not specifically admitted above and reserves the right to amend this Answer and Affirmative Defenses to add additional Affirmative Defenses consistent with the facts discovered in this case. Further, Levy does not assume or shift any burden of proof on any issue that is Plaintiff's burden as a matter of law.

### FIRST AFFIRMATIVE DEFENSE

Royal's Complaint fails to state a claim for which relief sought can be granted.

### SECOND AFFIRMATIVE DEFENSE

Royal's claims are barred, in whole or in part, by Royal's prior material breaches.

### THIRD AFFIRMATIVE DEFENSE

Royal's claims are barred, in whole or in part, because Levy properly terminated the Daytona Contract.

### FOURTH AFFIRMATIVE DEFENSE

Royal's claims are barred, in whole or in part, by the doctrines of estoppel, waiver, unclean hands, and other equitable defenses.

### FIFTH AFFIRMATIVE DEFENSE

Royal's claims for damages are barred, in whole or in part, by Section 13.2 of both Contracts, under which Royal agreed that the maximum liability of Levy to Royal, "regardless of

the nature of the claim or dispute," "shall be limited to the total Commissions paid by Levy in a single calendar year."

**SIXTH AFFIRMATIVE DEFENSE**

Royal did not suffer any damages attributable to the actions or omissions of Levy.

**SEVENTH AFFIRMATIVE DEFENSE**

Royal failed to mitigate any damages it incurred reasonably.

**EIGHTH AFFIRMATIVE DEFENSE**

Royal's claim for unjust enrichment is barred because the Parties had valid, enforceable contracts.

**NINTH AFFIRMATIVE DEFENSE**

Royal's claim for unjust enrichment is barred, in whole or in part, barred because Levy did not receive or accept any benefits of Royal's products or services at the Daytona Event.

**TENTH AFFIRMATIVE DEFENSE**

Royal would be unjustly enriched should it be awarded the relief sought.

**COUNTERCLAIMS**

1. Levy Premium Foodservice Limited Partnership ("Levy") is a leader in the business of providing hospitality at large-scale venues, such as sports and entertainment events, music festivals, convention centers, and other major cultural attractions. One of Levy's specialties is partnering with professional sports organizations—including the NFL, MLB, NBA, and, relevant here, NASCAR—to provide premium food and beverage services at events put on by those organizations.

2. Levy often directly provides its own food and beverage services at these sporting events, including through its own restaurant concepts and chefs. But part of Levy's business

model also involves identifying and subcontracting with vendors to sell concessions at these events.

3. Consistent with that practice, Levy hired Royal Entertainment Events, LLC ("Royal"), a company that represents itself as "a full-service brand activation agency" and "[a]n events management and staffing service,"[1] to provide concessions services at two NASCAR events in 2024. Despite Royal's representations to Levy that it was capable of providing the services Levy required, it quickly became apparent after the engagement began that Royal was not equipped to handle concessions for large sporting events. As a result, Royal breached many of its contractual obligations, including by failing to supply the equipment, food, and staff necessary for providing concessions services.

## PARTIES

4. Levy is a limited partnership with its principal place of business in Chicago, Illinois. Levy's partners are citizens of Delaware, Illinois, North Carolina, and Spain.

5. Royal is a limited liability company with its principal place of business in Olive Branch, Mississippi. Royal's members are all citizens of Mississippi.

## JURISDICTION & VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Royal, and venue is proper in this District and Division, because Royal consented in the relevant agreements to the "exclusive

[1] Royal Entertainment Events: About Us (last visited Aug. 17, 2026), https://www.royalentertainmentevents.com/.

jurisdiction" of "a state or federal court in the State of Illinois." Royal has further consented and/or waived any objection to jurisdiction by filing its claims against Levy in the Circuit Court of Cook County, Illinois.

8. All conditions precedent to the bringing of this action have occurred, or Royal has waived them.

## BACKGROUND

### A. Levy and Royal Enter into a Business Arrangement.

9. Levy manages food and beverage services at various large-scale sporting events and other venues, including at two NASCAR venues relevant here: Richmond International Raceway and Daytona International Speedway. In June 2023, Royal solicited Levy, seeking event opportunities by touting its marketing and concessions services. Roughly a year later, Levy and Royal entered into discussions concerning Levy hiring Royal to provide concession services at NASCAR events. The parties ultimately agreed that Levy would engage Royal to provide concessions at races held at Richmond in August 2024 (the "Richmond Event") and Daytona in August 2024 (the "Daytona Event").

10. The Parties signed separate agreements for these events. On July 29, 2024, the Parties executed a contract dated July 23, 2024 for Royal to provide concessions services at Daytona (the "Daytona Contract"). And on August 6, 2024, the Parties executed the contract dated August 5, 2024 for the Richmond Event (the "Richmond Contract").

11. The Richmond Contract and the Daytona Contract required that Royal supply the food products and much of the related concessions material for the Richmond and Daytona Events, respectively. Section 1.3 of each contract requires Royal to "provide, at its own cost, all

equipment, serving pieces, utensils, storage containers and all other supplies and equipment necessary for the sale of the Products."

12. Similarly, Section 4.1 of each Contract makes Royal "responsible for maintaining sufficient inventory of the Products to meet anticipated demand for the Products"—which "shall be of a very high quality and subject to Levy's prior approval at all times"—and it specifies that Royal is "solely responsible for ordering and transporting the Products to and from the Concession Locations." Further, Section 7.3(C) of each Contract provides that Royal "must supply enough Product to maximize revenue and Net Sales for each event."

13. The Richmond Contract also imposes certain obligations regarding Royal's staffing. Section 5.1 requires Royal to "maintain a staff of its employees on duty at the Concession Locations at a level and in a manner consistent with the operating standards required by Levy." It also provides that Royal and "its management, supervisors and employees must behave in a professional manner at all times while in or around the Facility" and that "[n]o alcoholic beverages, drugs, obscene or vulgar language or disruptive behavior is permitted anywhere in the Facility including the parking lot." Relatedly, Section 5.2 states that Royal, "and not Levy or Client, shall be responsible for the payment of all wages, payroll taxes, fringe benefits and severance for its employees." And Section 5.3 reiterates that Royal is responsible for paying its employees, noting that Royal "is solely responsible" for (among other things): "(i) paying [Royal's] employees at least the applicable minimum wage for all hours worked; (ii) paying [Royal's] employees required premiums for overtime hours, spread of hours, and split shifts where required; [and] (iii) paying [Royal's] employees within the time period required by applicable law . . . ."

14. Additionally, both Contracts required Royal to abide by certain food safety obligations. In Section 1.4, Royal "represents and warrants that it has read and agrees to comply with Levy's Responsible Alcohol Service Policy." And Section 3 of each Contract provides that Royal "shall be responsible for maintaining a high standard of service, hygiene, cleanliness and sanitation in each of the Concession Locations and the surrounding areas within a twenty-five (25) foot radius from each Concession Location."

15. Under Section 1.3 of both Contracts, Levy agreed to provide Royal with point-of-sale systems ("POS Devices") for Royal to use at the events. Royal agreed to "use the POS in a careful and proper manner" and to return it to Levy "in the same condition it was in when" provided to Royal. Further, Royal was required to "ensure that the POS is not stolen, damaged, or otherwise harmed" and was "responsible for paying repair or replacement fees associated with any loss, theft, or damages to the POS."

16. Finally, Section 8 of both Contracts requires Royal to reimburse Levy for "any expense arising from this Agreement or arising from the failure or neglect of [Royal] to perform or fulfill any of the terms or conditions of this Agreement."

**B. Royal Breaches Its Obligations Under the Richmond Contract.**

17. As soon as the Richmond Event began, it became apparent to Levy that, despite Royal's representations, Royal was not up to the task of providing concessions services for a large-scale sporting event.

18. Royal's incompetence was on full display from the outset. In certain hot dog and bar locations assigned to Royal located in the Richmond concourses, and in violation of Section 1.3 of the Richmond Contract, Royal failed to bring the equipment necessary to sell concessions.

Instead, Royal relied on Levy to provide tables and on its last-minute purchases of a tent and other equipment necessary to efficiently cook and sell basic concession fare like hot dogs.

19. Royal also did not order enough food product, thus breaching Sections 4.1 and 7.3(c) of the Richmond Contract. For example, Royal brought only two jugs of oil for the fryers, which filled only half of one fryer when four were available. As a result, Levy had to borrow oil from another subcontractor and then repurchase oil for that subcontractor. Royal also failed to supply an inventory of sufficient quality, relying on cheap, store-bought products instead of purchasing products directly from a high-quality food-service supplier. Royal's product shortages required Levy staff to make at least one trip to the store to replace products Royal should have supplied, diverting staff from other concession locations.

20. Not only did Royal not provide enough food, but Royal also did not provide enough staff. At an infield location at the Richmond International Raceway, for example, the kitchen was consistently short-staffed, requiring Levy to provide one of its chefs to Royal. Upon information and belief, Royal's management never assisted kitchen staff on their own, as would be typical of Levy's vendors in similar situations, nor did they ever ask "front-of-house" staff to assist the kitchen staff. In addition, Royal's management and staff consistently violated Levy policies by yelling, swearing, and behaving in a pushy and uncooperative manner. These staffing failures violated Section 5.1 of the Richmond Contract.

21. Nor did Royal comply with its obligations under Sections 5.2 and 5.3 of the Richmond Contract to pay its employees. Since the engagement between Royal and Levy concluded, multiple employees or former employees of Royal have approached Levy for assistance with obtaining payment, explaining that Royal has refused to pay them for time

worked at the Richmond Event. Royal is thus in breach of Sections 5.2 and 5.3 of the Richmond Contract.

22. Additionally, in violation of Section 3 of the Richmond Contract, Royal's chefs and staff were provided with little or no formal training on food service techniques or appropriate food safety measures. Royal's staff instead relied on Levy's chefs for coaching and proper food safety techniques throughout the Richmond Event. Royal also committed several infractions of Levy's alcohol policy, thereby violating Section 1.4 of the Richmond Contract.

23. To enable Royal to provide concessions at the Richmond Event more efficiently, Levy also provided point of sale systems ("POS Devices") and necessary supporting accessories, such as battery chargers. Instead of using the accessories Levy provided, however, Royal staff failed to charge the POS Devices. As a result of Royal's failure to use the POS Devices in a "careful and proper manner"—a violation of Section 1.3 of the Richmond Contract—Levy was forced to swap out the POS Devices multiple times.

24. Lastly, in breach of Section 8 of the Richmond Contract, Royal never reimbursed Levy for the numerous expenses Levy incurred on behalf of Royal due to Royal's contractual failures.

25. While Royal's Complaint attempts to shift the blame for its shortcomings to Levy, Royal's failures were entirely self-inflicted. In fact, Royal acknowledged its shortcomings to Levy soon after the Richmond Event, characterizing the situation as "a learning opportunity" for Royal.

**C. Levy Terminates the Daytona Contract.**

26. Section 11.2 of the Daytona Contract provides that "Levy may, in its sole discretion, terminate this Agreement prior to the expiration of the Term by giving five (5) days'

advance written notice to" Royal, and that "Levy may terminate this Agreement for no reason or any reason . . . ." It also provides that if "Levy determines that any aspect of [Royal]'s services do not meet Levy's quality or service standards, Levy shall be entitled to immediately terminate this Agreement." Because of the myriad issues arising out of the Richmond Event, Levy elected to terminate the Daytona Contract under Section 11.2 of that contract on August 19, 2024.

27. Although Levy properly terminated the Daytona Contract, and despite Levy's warning not to appear at the Daytona Event, Royal appeared at Daytona anyway. At the Daytona Event, Royal repeated many of the same mistakes and violations it made at the Richmond Event. Royal thus breached the Daytona Contract as well.

28. For example, Royal showed up at Daytona without any of the equipment necessary to sell the concessions, in violation of Section 1.3 of the Daytona Contract, forcing Levy to repurpose other equipment to cover Royal's shortfall.

29. Royal again failed to order enough food product for the Daytona Event, thus breaching Sections 4.1 and 7.3(c) of the Daytona Contract. Royal similarly violated Section 1.4 of the Daytona Contract by improperly managing alcohol supplies, breaching the Daytona Contract by violating alcohol policies.

30. Royal's staff at Daytona also perpetuated the hostile, aggressive, and demanding behavior that had infected the Richmond Event, all in violation of Section 5.1 of the Daytona Contract.

31. Finally, in breach of Section 8 of the Daytona Contract, Royal never reimbursed Levy for the numerous expenses Levy incurred on behalf of Royal due to Royal's contractual failures.

**COUNT I – Breach of the Richmond Contract**

32. Levy realleges and incorporates by reference paragraphs 1 through 25.

33. The Richmond Contract is a valid, enforceable contract.

34. Levy performed all its obligations under the Richmond Contract.

35. Royal breached its obligations under at least Sections 1.3, 1.4, 3, 4.1, 5.1, 5.2, 5.3, 7.3(c), and 8 of the Richmond Contract. Royal's conduct included, among other things, failing to provide equipment necessary for providing concessions services, failing to order and provide enough food products, failing to provide sufficient kitchen staffing, refusing to pay its employees, violating Levy's alcohol and employee conduct policies, failing to charge Levy's POS Devices, and failing to reimburse Levy for expenses Levy incurred due to Royal's failures.

36. Royal's breaches of the Richmond Contract damaged Levy in an amount to be determined at trial.

**COUNT II – Breach of the Daytona Contract**

37. Levy realleges and incorporates by reference paragraphs 1 through 16 and 26-31.

38. The Daytona Contract is a valid, enforceable contract.

39. Levy performed all its obligations under the Daytona Contract.

40. The Daytona Contract was properly terminated before the Daytona Event. Alternatively, to the extent the Daytona Contract termination was not valid or effective before the Daytona Event, Royal breached its obligations under at least Sections 1.3, 1.4, 4.1, 5.1, 7.3(c), and 8 of the Daytona Contract. Royal's conduct included, among other things, failing to provide equipment necessary for providing concessions services, failing to order and provide enough food products, violating Levy's alcohol and employee conduct policies, and failing to reimburse Levy for expenses Levy incurred due to Royal's failures.

41. Royal's breaches of the Daytona Contract damaged Levy in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered the surviving counts in Royal's Complaint, Levy prays that the same be dismissed with Royal taking nothing. Further, Levy respectfully requests that the Court grant the following relief:

1. An order declaring that Royal breached its contractual obligations to Levy;
2. Damages resulting from Royal's conduct alleged herein;
3. Pre- and post-judgment interest;
4. Attorneys' fees and costs; and
5. All other relief that the Court deems just and proper.

## JURY DEMAND

Levy demands a trial by Jury of 12 persons on all issues so triable.

Dated: September 2, 2026

Respectfully submitted,

By: */s/ Jonathan G. Musch*

Jonathan G. Musch
HILGERS PLLC
332 S. Michigan Ave., Ste. 121 #5612
Chicago, IL 60604
Telephone: (314) 464-3391
jmusch@hilgerslaw.com

Carl A. Miller (*pro hac vice*)
HILGERS PLLC
1320 Lincoln Mall, Ste. 200
Lincoln, NE 68508
Telephone: (402) 313-3480
cmiller@hilgerslaw.com

*Counsel for Defendant Levy Premium Foodservice Limited Partnership*

**CERTIFICATE OF SERVICE**

I, Jonathan G. Musch, an attorney, certify that I caused a copy of the foregoing document to be filed via ECF and, by operation of the Court's system, served via electronic mail on counsel of record this 2nd day of September 2026:

Steven V. Hunter
Taylor R. Rioux
QUARLES & BRADY LLP (36566)
300 N LaSalle Dr., Ste. 4000
Chicago, IL 60654
(312) 715-5000
steven.hunter@quarles.com
taylor.rioux@quarles.com

*/s/ Jonathan G. Musch*
Jonathan G. Musch