UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
**EASTERN DIVISION**

| | |
|---|---|
| ROYAL ENTERTAINMENT EVENTS, LLC,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>LEVY PREMIUM FOODSERVICE LIMITED PARTNERSHIP,<br><br>Defendant/Counter-Claimant. | **Case No. 1:25-cv-05721**<br><br>**Hon. Charles P. Kocoras** |

**PLAINTIFF/COUNTER-DEFENDANT ROYAL ENTERTAINMENT EVENTS, LLC'S ANSWER TO DEFENDANT/COUNTER-CLAIMANT'S COUNTERCLAIMS**

Plaintiff/Counter-Defendant Royal Entertainment Events, LLC ("Royal Entertainment"), by and through its attorneys, Steven V. Hunter and Taylor R. Rioux of Quarles & Brady LLP, hereby answers the Counterclaims asserted by Defendant/Counter-Claimant Levy Premium Foodservice Limited Partnership ("Levy") in its Answer and Counterclaims [Doc. 52], filed September 2, 2026, as follows:

## RESPONSE TO COUNTERCLAIM ALLEGATIONS

1. Levy describes itself as a leader in hospitality services at large-scale venues, including sports and entertainment events, festivals, convention centers, and cultural attractions, and says it partners with professional sports organizations such as the NFL, MLB, NBA, and NASCAR to provide premium food and beverage services.

**ANSWER:** Royal Entertainment admits that Levy describes itself as a leader in providing hospitality services at large-scale venues. Royal Entertainment lacks sufficient knowledge or information to form a belief as to the truth of Levy's characterization of the scope and breadth of its business relationships and therefore denies the same.

2. Levy states that it often provides its own food and beverage services through its restaurant concepts and chefs, but also identifies and subcontracts with vendors to sell concessions at sporting events.

**ANSWER:** Royal Entertainment admits that Levy sometimes subcontracts with vendors to sell concessions at events. Royal Entertainment lacks sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 2 and therefore denies the same.

3. Levy alleges that it hired Royal to provide concessions at two 2024 NASCAR events based on Royal's representations that it could perform the required services, but that Royal soon appeared unable to handle large sporting events and breached obligations to provide necessary equipment, food, and staff.

**ANSWER:** Royal Entertainment admits that it provided concessions services at two NASCAR events in 2024 pursuant to contracts with Levy. Royal Entertainment denies all characterizations in Paragraph 3 that it "was not equipped to handle concessions for large sporting events" or that it "breached many of its contractual obligations." Royal Entertainment specifically denies that it failed to supply the equipment, food, and staff necessary for providing concessions services. Royal Entertainment affirmatively states that Levy's own failures—including failure to provide working POS systems, failure to provide settlement sheets, and failure to provide food as promised—caused the issues alleged by Levy.

## PARTIES

4. Levy alleges that it is a limited partnership headquartered in Chicago, Illinois, with partners who are citizens of Delaware, Illinois, North Carolina, and Spain.

**ANSWER:** Royal Entertainment admits that Levy is a limited partnership with its principal place of business in Chicago, Illinois. Royal Entertainment lacks sufficient knowledge or information to form a belief as to the citizenship of Levy's partners and therefore denies the same.

5. Levy alleges that Royal is a limited liability company headquartered in Olive Branch, Mississippi, whose members are all citizens of Mississippi.

5. Levy alleges that Royal is a limited liability company headquartered in Olive Branch, Mississippi, whose members are all citizens of Mississippi. **ANSWER:** Royal Entertainment admits the allegations in Paragraph 5.

## JURISDICTION & VENUE

6. Levy alleges that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds $75,000.

6. Levy alleges that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds $75,000. **ANSWER:** Paragraph 6 contains legal conclusions to which no response is required. To the extent a response is required, Royal Entertainment admits that this Court has subject-matter jurisdiction.

7. Levy alleges that this Court has personal jurisdiction and that venue is proper because Royal agreed to exclusive jurisdiction in Illinois under the relevant contracts and waived or consented to jurisdiction by filing its claims in the Circuit Court of Cook County.

7. Levy alleges that this Court has personal jurisdiction and that venue is proper because Royal agreed to exclusive jurisdiction in Illinois under the relevant contracts and waived

or consented to jurisdiction by filing its claims in the Circuit Court of Cook County. **ANSWER:** Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, Royal Entertainment admits that the relevant contracts contain forum selection clauses and that Royal Entertainment filed its claims in the Circuit Court of Cook County, Illinois. The contracts speak for themselves with respect to their specific terms.

8. Levy alleges that all conditions precedent to bringing this action occurred or were waived.

8. Levy alleges that all conditions precedent to bringing this action occurred or were waived. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 8.

**BACKGROUND**

9. Levy alleges that it manages food and beverage services at venues including Richmond International Raceway and Daytona International Speedway; that Royal solicited Levy in June 2023 by touting marketing and concessions services; and that the parties later agreed for Royal to provide concessions at NASCAR events in Richmond and Daytona in August 2024.

9. Levy alleges that it manages food and beverage services at venues including Richmond International Raceway and Daytona International Speedway; that Royal solicited Levy in June 2023 by touting marketing and concessions services; and that the parties later agreed for Royal to provide concessions at NASCAR events in Richmond and Daytona in August 2024. **ANSWER:** Royal Entertainment admits that Levy manages food and beverage services at various venues, including at Richmond International Raceway and Daytona International Speedway, and that the parties agreed that Levy would engage Royal Entertainment to provide concessions at NASCAR events at those two venues in August 2024. Royal Entertainment denies that it "solicited" Levy and denies any other allegations in Paragraph 9 not expressly admitted.

10. Levy alleges that the parties executed separate event contracts: the Daytona Contract on July 29, 2024, dated July 23, 2024, and the Richmond Contract on August 6, 2024, dated August 5, 2024.

10. Levy alleges that the parties executed separate event contracts: the Daytona Contract on July 29, 2024, dated July 23, 2024, and the Richmond Contract on August 6, 2024, dated August 5, 2024. **ANSWER:** Royal Entertainment admits that the parties signed the Daytona Contract (executed July 29, 2024, dated July 23, 2024) and the Richmond Contract (executed August 6, 2024, dated August 5, 2024). The contracts speak for themselves.

11. Levy alleges that both contracts required Royal to supply the food products and much of the concessions material, including, under Section 1.3, all equipment, serving pieces, utensils, storage containers, and other supplies and equipment needed to sell the products.

11. Levy alleges that both contracts required Royal to supply the food products and much of the concessions material, including, under Section 1.3, all equipment, serving pieces, utensils, storage containers, and other supplies and equipment needed to sell the products. **ANSWER:** The Richmond Contract and the Daytona Contract speak for themselves with respect to their terms. Royal Entertainment denies any characterization of those contracts that is inconsistent with their plain language.

12. Levy alleges that Section 4.1 made Royal responsible for maintaining sufficient, high-quality inventory subject to Levy's approval and for ordering and transporting products, while Section 7.3(c) required Royal to supply enough product to maximize event revenue and net sales.

12. Levy alleges that Section 4.1 made Royal responsible for maintaining sufficient, high-quality inventory subject to Levy's approval and for ordering and transporting products, while Section 7.3(c) required Royal to supply enough product to maximize event revenue and net sales. **ANSWER:** The contracts speak for themselves with respect to Sections 4.1 and 7.3(c). Royal Entertainment denies any characterization of those provisions that is inconsistent with their plain language.

13. Levy alleges that the Richmond Contract required Royal to maintain sufficient staff, ensure professional conduct and compliance with facility rules, and bear responsibility for employee wages, payroll taxes, benefits, severance, minimum wage, overtime, and other required employee payments under Sections 5.1 through 5.3.

13. Levy alleges that the Richmond Contract required Royal to maintain sufficient staff, ensure professional conduct and compliance with facility rules, and bear responsibility for employee wages, payroll taxes, benefits, severance, minimum wage, overtime, and other required employee payments under Sections 5.1 through 5.3. **ANSWER:** The Richmond Contract speaks for itself with respect to Sections 5.1, 5.2, and 5.3. Royal Entertainment denies any characterization of those provisions that is inconsistent with their plain language.

14. Levy alleges that both contracts required Royal to comply with Levy's Responsible Alcohol Service Policy and maintain high standards of service, hygiene, cleanliness, and sanitation at each concession location and within 25 feet of it.

14. Levy alleges that both contracts required Royal to comply with Levy's Responsible Alcohol Service Policy and maintain high standards of service, hygiene, cleanliness, and sanitation at each concession location and within 25 feet of it. **ANSWER:** The contracts speak for themselves with respect to Sections 1.4 and 3. Royal Entertainment denies any characterization of those provisions that is inconsistent with their plain language.

15. Levy alleges that it agreed to provide POS Devices, while Royal was required to use them carefully, return them in the same condition, prevent loss or damage, and pay repair or replacement costs for any loss, theft, or damage.

**ANSWER:** The contracts speak for themselves with respect to Section 1.3 and its provisions regarding POS Devices. Royal Entertainment affirmatively states that Levy was required to provide working POS systems and failed to do so.

16. Levy alleges that Section 8 of both contracts required Royal to reimburse Levy for expenses arising from the agreements or from Royal's failure or neglect to perform its contractual obligations.

16. Levy alleges that Section 8 of both contracts required Royal to reimburse Levy for expenses arising from the agreements or from Royal's failure or neglect to perform its contractual obligations. **ANSWER:** The contracts speak for themselves with respect to Section 8. Royal Entertainment denies any characterization of that provision that is inconsistent with its plain language.

## THE RICHMOND EVENT

17. Levy alleges that, when the Richmond Event began, Royal's performance showed that it was not capable of providing concessions services for a large-scale sporting event despite its prior representations.

17. Levy alleges that, when the Richmond Event began, Royal's performance showed that it was not capable of providing concessions services for a large-scale sporting event despite its prior representations. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 17 in their entirety. Royal Entertainment denies that it was "not up to the task" of providing concessions services.

18. Levy alleges that Royal failed to bring necessary equipment to certain Richmond hot dog and bar locations, relied on Levy for tables, and made last-minute purchases of a tent and other equipment, violating Section 1.3.

**ANSWER:** Royal Entertainment denies the allegations in Paragraph 18. Royal Entertainment denies that it failed to bring the equipment necessary to sell concessions in violation of Section 1.3 of the Richmond Contract. Royal Entertainment affirmatively states that Levy's own failures to provide the equipment, infrastructure, and support it was obligated to provide under the contract contributed to any issues at the Richmond Event.

19. Levy alleges that Royal ordered too little food for Richmond, including insufficient fryer oil, used low-quality store-bought products, and caused Levy staff to obtain replacement products, breaching Sections 4.1 and 7.3(c).

19. Levy alleges that Royal ordered too little food for Richmond, including insufficient fryer oil, used low-quality store-bought products, and caused Levy staff to obtain replacement products, breaching Sections 4.1 and 7.3(c). **ANSWER:** Royal Entertainment denies the allegations in Paragraph 19. Royal Entertainment denies that it failed to order enough food product in breach of Sections 4.1 and 7.3(c). Royal Entertainment affirmatively states that Levy failed to provide food as promised and that Levy's own shortcomings caused any product shortages.

20. Levy alleges that Royal inadequately staffed a Richmond infield kitchen, required Levy to provide a chef, failed to have management or front-of-house staff assist, and engaged in yelling, swearing, and pushy or uncooperative conduct in violation of Section 5.1.

20. Levy alleges that Royal inadequately staffed a Richmond infield kitchen, required Levy to provide a chef, failed to have management or front-of-house staff assist, and engaged in yelling, swearing, and pushy or uncooperative conduct in violation of Section 5.1. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 20. Royal Entertainment denies that it failed to provide sufficient staffing in violation of Section 5.1 of the Richmond Contract. Royal Entertainment further denies that its management or staff behaved unprofessionally. Royal Entertainment affirmatively states that Levy's own operational failures created the conditions Levy now attributes to Royal Entertainment.

21. Levy alleges that Royal failed to pay employees for work at the Richmond Event, based on reports from current or former Royal employees who sought Levy's assistance, in violation of Sections 5.2 and 5.3.

21. Levy alleges that Royal failed to pay employees for work at the Richmond Event, based on reports from current or former Royal employees who sought Levy's assistance, in violation of Sections 5.2 and 5.3. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 21. Royal Entertainment denies that it failed to pay its employees in violation of Sections 5.2 and 5.3 of the Richmond Contract.

22. Levy alleges that Royal's chefs and staff received little or no formal food-service or food-safety training, relied on Levy's chefs for coaching, and committed alcohol-policy violations in breach of Sections 3 and 1.4.

22. Levy alleges that Royal's chefs and staff received little or no formal food-service or food-safety training, relied on Levy's chefs for coaching, and committed alcohol-policy violations in breach of Sections 3 and 1.4. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 22. Royal Entertainment denies that its staff lacked food service training or that it violated Section 3 or Section 1.4 of the Richmond Contract.

23. Levy alleges that it supplied POS Devices and accessories, but Royal failed to charge or properly use the devices, forcing Levy to replace them multiple times and violating Section 1.3.

23. Levy alleges that it supplied POS Devices and accessories, but Royal failed to charge or properly use the devices, forcing Levy to replace them multiple times and violating Section 1.3. **ANSWER:** Royal Entertainment admits that Levy provided POS Devices. Royal Entertainment denies the remaining allegations in Paragraph 23. Royal Entertainment denies that it failed to charge the POS Devices or that it failed to use the POS Devices in a "careful and proper manner." Royal Entertainment affirmatively states that the POS Devices provided by Levy malfunctioned and were unreliable, and that Levy failed to provide working POS systems as required under Section 1.3 of the Richmond Contract.

24. Levy alleges that Royal failed to reimburse it for expenses incurred because of Royal's contractual failures, in breach of Section 8 of the Richmond Contract.

24. Levy alleges that Royal failed to reimburse it for expenses incurred because of Royal's contractual failures, in breach of Section 8 of the Richmond Contract. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 24. Royal Entertainment denies that it owes Levy any reimbursement under Section 8 of the Richmond Contract.

25. Levy alleges that Royal's failures at Richmond were entirely self-inflicted, that Royal's Complaint improperly shifts blame to Levy, and that Royal acknowledged its shortcomings afterward by calling the experience a learning opportunity.

**ANSWER:** Royal Entertainment denies the allegations in Paragraph 25 in their entirety. Royal Entertainment denies that its "failures were entirely self-inflicted" and denies the characterization of any communications between the parties.

## THE DAYTONA CONTRACT AND DAYTONA EVENT

26. Levy alleges that Section 11.2 allowed it to terminate the Daytona Contract in its sole discretion with five days' notice, for any or no reason, or immediately if Royal's services

failed to meet Levy's standards, and that Levy exercised that right on August 19, 2024 because of the Richmond issues.

26. Levy alleges that Section 11.2 allowed it to terminate the Daytona Contract in its sole discretion with five days' notice, for any or no reason, or immediately if Royal's services failed to meet Levy's standards, and that Levy exercised that right on August 19, 2024 because of the Richmond issues. **ANSWER:** The Daytona Contract speaks for itself with respect to Section 11.2. Royal Entertainment admits that Levy purported to terminate the Daytona Contract under Section 11.2 on August 19, 2024. Royal Entertainment denies that Levy properly terminated the Daytona Contract. Royal Entertainment affirmatively states that Levy's termination of the Daytona Contract was in bad faith.

27. Levy alleges that it properly terminated the Daytona Contract and warned Royal not to appear, but that Royal appeared anyway and repeated the Richmond mistakes and violations, thereby breaching the Daytona Contract.

27. Levy alleges that it properly terminated the Daytona Contract and warned Royal not to appear, but that Royal appeared anyway and repeated the Richmond mistakes and violations, thereby breaching the Daytona Contract. **ANSWER:** Royal Entertainment admits that it appeared at the Daytona Event. Royal Entertainment denies that it "repeated many of the same mistakes and violations" alleged in connection with the Richmond Event. Royal Entertainment denies that it breached the Daytona Contract.

28. Levy alleges that Royal arrived at Daytona without equipment needed to sell concessions, violating Section 1.3, and forced Levy to repurpose other equipment to address the shortfall.

28. Levy alleges that Royal arrived at Daytona without equipment needed to sell concessions, violating Section 1.3, and forced Levy to repurpose other equipment to address the shortfall. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 28. Royal Entertainment denies that it failed to bring equipment necessary to sell concessions in violation of Section 1.3 of the Daytona Contract.

29. Levy alleges that Royal again ordered too little food for Daytona and improperly managed alcohol supplies, violating Sections 4.1, 7.3(c), and 1.4 of the Daytona Contract.

29. Levy alleges that Royal again ordered too little food for Daytona and improperly managed alcohol supplies, violating Sections 4.1, 7.3(c), and 1.4 of the Daytona Contract. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 29. Royal Entertainment denies that it failed to order enough food product or that it improperly managed alcohol supplies in violation of Sections 4.1, 7.3(c), or 1.4 of the Daytona Contract.

30. Levy alleges that Royal's Daytona staff continued the hostile, aggressive, and demanding conduct alleged at Richmond, in violation of Section 5.1 of the Daytona Contract.

30. Levy alleges that Royal's Daytona staff continued the hostile, aggressive, and demanding conduct alleged at Richmond, in violation of Section 5.1 of the Daytona Contract. **ANSWER:** Royal Entertainment denies the allegations in Paragraph 30. Royal Entertainment denies that its staff engaged in "hostile, aggressive, and demanding behavior" in violation of Section 5.1 of the Daytona Contract.

31. Levy alleges that Royal failed to reimburse it for expenses incurred because of Royal's contractual failures, in breach of Section 8 of the Daytona Contract.

**ANSWER:** Royal Entertainment denies the allegations in Paragraph 31. Royal Entertainment denies that it owes Levy any reimbursement under Section 8 of the Daytona Contract.

**RESPONSE TO COUNT I – BREACH OF THE RICHMOND CONTRACT**

**(Paragraphs 32–36)**

32. Levy incorporates its allegations in Counterclaim paragraphs 1 through 25 into Count I for breach of the Richmond Contract.

32. Levy incorporates its allegations in Counterclaim paragraphs 1 through 25 into Count I for breach of the Richmond Contract. **ANSWER:** Royal Entertainment incorporates by reference its responses to Paragraphs 1 through 25 above as if fully set forth herein.

33. Levy alleges that the Richmond Contract is a valid and enforceable contract. **ANSWER:** Royal Entertainment admits that the Richmond Contract is a valid, enforceable contract.

34. Levy alleges that it performed all of its obligations under the Richmond Contract.

34. Levy alleges that it performed all of its obligations under the Richmond Contract. **ANSWER:** Royal Entertainment denies that Levy performed all its obligations under the Richmond Contract. Royal Entertainment affirmatively states that Levy breached the Richmond Contract by, among other things, failing to provide working POS systems, failing to provide settlement sheets as required under Section 7.2, and failing to provide food as promised.

35. Levy alleges that Royal breached Sections 1.3, 1.4, 3, 4.1, 5.1, 5.2, 5.3, 7.3(c), and 8 of the Richmond Contract by failing to provide equipment, sufficient food, and kitchen staffing; refusing to pay employees; violating alcohol and employee-conduct policies; failing to charge POS Devices; and failing to reimburse Levy's related expenses.

35. Levy alleges that Royal breached Sections 1.3, 1.4, 3, 4.1, 5.1, 5.2, 5.3, 7.3(c), and 8 of the Richmond Contract by failing to provide equipment, sufficient food, and kitchen staffing; refusing to pay employees; violating alcohol and employee-conduct policies; failing to charge POS Devices; and failing to reimburse Levy's related expenses. **ANSWER:** Royal Entertainment denies that it breached its obligations under Sections 1.3, 1.4, 3, 4.1, 5.1, 5.2, 5.3, 7.3(c), and 8 of the Richmond Contract. Royal Entertainment denies each and every specific allegation of breach set forth in Paragraph 35. Royal Entertainment performed its obligations under the Richmond Contract; any alleged non-performance was the direct result of Levy's own prior material breaches.

36. Levy alleges that Royal's breaches of the Richmond Contract caused Levy damages in an amount to be determined at trial.

36. Levy alleges that Royal's breaches of the Richmond Contract caused Levy damages in an amount to be determined at trial. **ANSWER:** Royal Entertainment denies that Levy was damaged by any conduct of Royal Entertainment. To the extent Levy suffered any damages, such damages were caused by Levy's own breaches and failures.

## RESPONSE TO COUNT II – BREACH OF THE DAYTONA CONTRACT

## (Paragraphs 37–41)

37. Levy incorporates its allegations in Counterclaim paragraphs 1 through 16 and 26 through 31 into Count II for breach of the Daytona Contract.

37. Levy incorporates its allegations in Counterclaim paragraphs 1 through 16 and 26 through 31 into Count II for breach of the Daytona Contract. **ANSWER:** Royal Entertainment incorporates by reference its responses to Paragraphs 1 through 16 and 26 through 31 above as if fully set forth herein.

38. Levy alleges that the Daytona Contract is a valid and enforceable contract.

38. Levy alleges that the Daytona Contract is a valid and enforceable contract. **ANSWER:** Royal Entertainment admits that the Daytona Contract is a valid, enforceable contract.

39. Levy alleges that it performed all of its obligations under the Daytona Contract.

39. Levy alleges that it performed all of its obligations under the Daytona Contract. **ANSWER:** Royal Entertainment denies that Levy performed all its obligations under the Daytona Contract. Royal Entertainment affirmatively states that Levy breached the Daytona Contract by terminating it in bad faith.

40. Levy alleges that it properly terminated the Daytona Contract before the event; alternatively, if the termination was not valid or effective, Levy alleges that Royal breached Sections 1.3, 1.4, 4.1, 5.1, 7.3(c), and 8 by failing to provide equipment and sufficient food, violating alcohol and employee-conduct policies, and failing to reimburse Levy's related expenses.

40. Levy alleges that it properly terminated the Daytona Contract before the event; alternatively, if the termination was not valid or effective, Levy alleges that Royal breached Sections 1.3, 1.4, 4.1, 5.1, 7.3(c), and 8 by failing to provide equipment and sufficient food, violating alcohol and employee-conduct policies, and failing to reimburse Levy's related expenses. **ANSWER:** Royal Entertainment denies that the Daytona Contract was properly terminated before the Daytona Event. To the extent the termination is deemed valid, Royal Entertainment denies that it breached any obligations under the Daytona Contract after such termination. Royal Entertainment affirmatively states that Levy terminated the Daytona Contract in bad faith and cannot simultaneously claim the contract was properly terminated while also seeking damages for post-termination breaches of that same contract.

41. Levy alleges that Royal's breaches of the Daytona Contract caused Levy damages in an amount to be determined at trial.

41. Levy alleges that Royal's breaches of the Daytona Contract caused Levy damages in an amount to be determined at trial. **ANSWER:** Royal Entertainment denies that

Levy was damaged by any conduct of Royal Entertainment. To the extent Levy suffered any damages in connection with the Daytona Event, such damages were caused by Levy's own bad faith termination and failures.

## RESPONSE TO PRAYER FOR RELIEF

Royal Entertainment denies that Levy is entitled to any of the relief requested in its Prayer for Relief. Royal Entertainment respectfully requests that Levy's Counterclaims be dismissed with prejudice, that Levy take nothing, and that the Court award Royal Entertainment its costs, attorneys' fees, and such other relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any issue for which it does not bear the burden as a matter of law, Royal Entertainment asserts the following affirmative defenses to Levy's Counterclaims:

### FIRST AFFIRMATIVE DEFENSE

*(Failure to State a Claim)*

Levy's Counterclaims, or portions thereof, fail to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

*(Failure to Mitigate Damages)*

Levy failed to take reasonable steps to mitigate its alleged damages, and any recovery should be reduced accordingly.

### THIRD AFFIRMATIVE DEFENSE

*(Comparative Fault / Contributory Negligence)*

Levy's own failures caused or contributed to any alleged damages. Levy's claims are barred or reduced in proportion to its own fault, including its failure to provide working POS systems, failure to provide settlement sheets, and failure to provide food as promised.

### FOURTH AFFIRMATIVE DEFENSE

*(Setoff and Recoupment)*

Royal Entertainment's own claims against Levy, including claims for breach of contract and unjust enrichment, offset any damages Levy may be awarded on its Counterclaims.

### FIFTH AFFIRMATIVE DEFENSE

*(Waiver)*

Levy waived any claims arising from the Richmond Event by its own conduct, including by continuing to engage Royal Entertainment to perform at the Daytona Event after the alleged Richmond issues. Levy's actions are inconsistent with an intent to enforce the rights it now seeks to assert.

**SIXTH AFFIRMATIVE DEFENSE**

*(Estoppel)*

Levy is estopped from asserting its Counterclaims by reason of its own conduct, representations, and course of dealing with Royal Entertainment.

**SEVENTH AFFIRMATIVE DEFENSE**

*(Unclean Hands)*

Levy's Counterclaims are barred by the doctrine of unclean hands. Levy's own bad faith conduct—including its failure to perform its obligations under the contracts, its scheme to undermine Royal Entertainment's operations, and its bad faith termination of the Daytona Contract—precludes recovery.

**EIGHTH AFFIRMATIVE DEFENSE**

*(Prior Material Breach by Levy)*

Levy's own material breaches of the Richmond Contract and the Daytona Contract—including failure to provide working POS systems, failure to provide settlement sheets as required under Section 7.2, and failure to provide food as promised—excuse any alleged non-performance by Royal Entertainment. A party in material breach of a contract cannot recover damages from the other party for that other party's alleged breach.

**NINTH AFFIRMATIVE DEFENSE**

*(Contractual Limitation of Liability)*

Levy's recovery, if any, is limited by Section 13.2 of the Richmond Contract and the Daytona Contract, which provides that the maximum liability of either party, "regardless of the nature of the claim or dispute," "shall be limited to the total Commissions paid by Levy in a single calendar year." This limitation applies equally to limit Levy's recovery against Royal Entertainment.

**TENTH AFFIRMATIVE DEFENSE**

*(Unjust Enrichment / No Cognizable Damages)*

Levy suffered no cognizable damages as a result of any conduct by Royal Entertainment. To the extent any damages are found, Levy was itself enriched by Royal Entertainment's labor and services provided at the Richmond and Daytona Events.

**ELEVENTH AFFIRMATIVE DEFENSE**

*(Reservation of Rights)*

Royal Entertainment reserves the right to assert additional affirmative defenses as they become known through discovery or further investigation. This reservation is consistent with Fed. R. Civ. P. 15.

**JURY DEMAND**

Plaintiff/Counter-Defendant Royal Entertainment Events, LLC hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**QUARLES & BRADY LLP**

By: /s/ Steven Hunter
Steven V. Hunter (ARDC #6277695)
Taylor R. Rioux (ARDC #6350076)
QUARLES & BRADY LLP
155 North Wacker Drive, Suite 3200
Chicago, Illinois 60606
Telephone: (312) 715-5000
Steven.Hunter@quarles.com
Taylor.Rioux@quarles.com

*Attorneys for Plaintiff/Counter-Defendant Royal Entertainment Events, LLC*

## CERTIFICATE OF SERVICE

I, Steven V. Hunter, an attorney, hereby certify that on September 23, 2026, I caused the foregoing document to be filed via the Court's CM/ECF system, which will send notification of such filing to all counsel of record, including:

Jonathan G. Musch
HILGERS PLLC
332 S. Michigan Ave., Ste. 121 #5612
Chicago, IL 60604
(314) 464-3391
jmusch@hilgerslaw.com

Carl A. Miller (pro hac vice)
HILGERS PLLC
1320 Lincoln Mall, Ste. 200
Lincoln, NE 68508
cmiller@hilgerslaw.com

*Counsel for Defendant/Counter-Claimant Levy Premium Foodservice Limited Partnership*

*<u>/s/ Steven Hunter</u>*
Steven V. Hunter